In re **WESTAR PAVING, INC.,** Debtor.

**Bankruptcy No. LA 94–31674–ER.**

United States Bankruptcy Court,
C.D. California,
Los Angeles Division.

Dec. 9, 1999.

David L Ray, Los Angeles.

Damon G. Saltzburg, Saltzburg, Ray & Bergman, LLP, Los Angeles.

## MEMORANDUM OF DECISION

ERNEST M. ROBLES, Bankruptcy Judge.

On October 6, 1999, the Court heard the chapter 7 trustee's Final Report and Application for Fees and Expenses and the Opposition thereto filed by the Office of the United States Trustee ("OUST"). Damon G. Saltzburg, Esq. appeared on behalf of the chapter 7 trustee, David L. Ray, Esq., and Peter S. Burke, Esq. appeared on behalf of the OUST.

After entertaining oral argument, the Court ordered further briefing on the issue of whether the chapter 7 trustee's fees should be calculated using pre- or post–1994 amendment rates under 11 U.S.C. § 326(a).[1]  For the reasons set forth fully below, the Court finds that the pre–1994 amendment rates apply and orders the chapter 7 trustee to disgorge $6,771.85 of the fees received by the chapter 7 trustee on an interim basis.

1. Unless otherwise noted, all section references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

2. The amount requested, $11,000.68, is comprised of: 25% of the first $5,000 ($1,250); 10% of the next $45,000 ($4,500); and 5% of any amount in excess of $50,000 ($5,250.68), based upon total receipts of $155,013.55. *See* Section 326(a) (1994).

## I.

### FACTS

Westar Paving, Inc., ("Debtor") filed a voluntary chapter 11 petition on June 8, 1994. On July 18, 1995, the case was converted to chapter 7. On November 22, 1995, David L. Ray was appointed the chapter 7 trustee ("Trustee").

The Trustee was awarded interim compensation on April 21, 1997, in the amount of $10,852.26 in fees and $178.54 in expenses. The Trustee submitted his Final Report and Application for Trustee Fees and Expenses ("Application") on August 25, 1999. The Trustee requested $11,000.68 in fees and $178.54 in expenses. In calculating the fee request, the Trustee used the post–1994 amendment rates under section 326(a) based upon total receipts of $155,013.55.[2]

The OUST filed an objection and requested a hearing on the Application. The OUST objects to the Application on two grounds. First, the OUST asserts that the Trustee's maximum amount of compensation should be based upon the fee formula provided by section 326(a) as it existed prior to the 1994 amendments. Under the pre–1994 amendment rates, the maximum statutory fee is $4,830.41 based upon total receipts of $155,013.55.[3]  Second, the OUST asserts that the Application should have been submitted no later than December 31, 1997, and, because of the delay, the Trustee's maximum statutory fee should be reduced by at least $750.00.[4]  Therefore, the OUST requests that the Trustee disgorge $6,771.85 of the fees received on an interim basis.

3. The pre–1994 amendment statutory fee is comprised of: 15% of the first $1,000 ($150); 6% of the next $2,000 ($120); and 3% of any amount disbursed in excess of $3,000 ($4,560.41), based upon total disbursements of $155,013.55. *See* Section 326(a) (1986).

4. The Trustee has voluntarily offered to reduce his total fee by $750.00 because the case should have been closed earlier.

## II.

## ISSUE

In a bankruptcy case which is converted from chapter 11 to chapter 7 after the effective date of the 1994 amendments to section 326(a), should the pre- or post–1994 fee formula apply in determining the maximum compensation payable to the Trustee?

## III.

## DISCUSSION

For the reasons set forth below, the Court finds that the pre–1994 version of section 326(a) must be used to compute the maximum compensation payable to the Trustee in a case converted from chapter 11 to chapter 7 after the effective date of the 1994 amendments.

### A. Application of the pre–1994 version of section 326(a) is consistent with the Bankruptcy Reform Act.

Section 326(a) establishes the maximum compensation payable to the Trustee. Section 326(a) has been amended twice within the last fifteen years to increase the percentages used to compute trustees' fees. In 1984, section 326(a) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") to

allow the trustee to receive 3% on any amount over $3,000 of total receipts.[5] See Pub.L.No. 98–353, 98 Stat. 333 (1984). The Bankruptcy Reform Act of 1994 ("Reform Act") again increased the trustees' maximum compensation by adjusting the percentage distribution scheme.[6] See Pub. L.No. 103–394, 108 Stat. 4106 (1994). The date of enactment of the Reform Act was October 22, 1994. Section 702(b) of the Reform Act provides that "amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act." Pub.L.No. 103–394 at section 702(b). Therefore, if the conversion of this case from chapter 11 to chapter 7 does not effectively change the date of commencement of the case, then the pre–1994 fee formula must be applied.

■ A bankruptcy case is commenced by the filing of a petition. See Section 301.[7] Section 348(a) provides that *"conversion of a case under one chapter of this title to a case under another chapter of this title* constitutes an order for relief under the chapter to which the case is converted, but... *does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."* Section 348(a) (emphasis added).

5. Section 326(a) after the BAFJA amendments stated:

In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

6. Section 326(a) after the Reform Act stated:
In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 per-

cent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed three percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

7. Section 301 states:

A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

The Court finds that the Reform Act and section 348(a) must be read so that each is consistent with the other. It would appear that the interpretation urged by the Trustee would in effect render section 702(b) of the Reform Act meaningless.

### B. Statutory construction supports the OUST's position.

█ Statutory language is conclusive absent expressed legislative intent to the contrary. *See Consumer Product Safety Commission, et al. v. GTE Sylvania, Inc. et al.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Where the statutory language is plain, "the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Burlington Northern Railroad Co. v. Oklahoma Tax Commission,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987)(holding that where a statute is clear and unambiguous, the statutory language must control, unless there is clearly expressed legislative intent to the contrary), *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986), *Caminetti v. U.S.,* 242 U.S. 470, 478, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *In re Sufolla, Inc. v. U.S. National Bank of Oregon,* 2 F.3d 977, 983 (9th Cir.1993); *Johnston Envtl. Corp. v. Knight,* 991 F.2d 613, 619–20 (9th Cir. 1993), *In re Richard E. Shaw v. County of San Bernardino (In re Shaw),* 157 B.R. 151, 152 (9th Cir. BAP 1993).

█ This bankruptcy case was commenced before the effective date of the Reform Act by the filing of the chapter 11 petition on June 8, 1994. *See* Section 301. The import of the language of section 702(b) of the Reform Act is that section 326(a) applies only to cases commenced after October 22, 1994. Since conversion of the case from chapter 11 to chapter 7 does not itself change the date of commencement, the determination of the Trustee's compensation should, therefore, be governed by section 326(a) as it existed prior to the Reform Act. *See* Section 348(a).

█ The Trustee argues that the statutory language of section 326(a) is not clear on its face and, therefore, that the intent of Congress should determine the correct rate formula to apply. According to the Trustee, Congress' intent in amending section 326(a) was to "more fairly compensate trustees for their services rendered in a case based upon the change in economic circumstances in the ten years since the code was last amended in 1984." *See* Trustee's Reply Brief at 3. Indeed, Congress amended section 326(a) to increase the fee percentages available to trustees in order to accommodate inflation and encourage the overall participation of parties as trustees. *See In re Monus,* 210 B.R. 541, 544 (Bankr.N.D.Ohio 1997). The Trustee cites the Supreme Court case of *Ron Pair Enterprises, Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031, in support of his argument. The Supreme Court stated:

> The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstratedly at odds with the intentions of its drafters." In such cases, the intention of the drafters, rather than the strict language, controls.

*Id., quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

This Court holds that the language of sections 301, 326(a), and 348(a) is clear on its face. Literal application of those sections will not produce a result "demonstratedly at odds with the intentions of its drafters." *See Ron Pair Enterprises, Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031, *Griffin,* 458 U.S. at 571, 102 S.Ct. at 3250. Since the language is clear, the plain meaning of those sections is conclusive. *See Ron Pair Enterprises, Inc.,* 489 U.S. at 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290; *Burlington Northern Railroad Co.,* 481 U.S. at 461, 107 S.Ct. at 1859, *James,* 478 U.S. at

606, 106 S.Ct. at 3121, *Caminetti,* 242 U.S. at 478, 37 S.Ct. at 194, *Consumer Product Safety Commission, et al. v. GTE Sylvania, Inc. et al.,* 447 U.S. at 108, 100 S.Ct. at 2056, *In re Sufolla,* 2 F.3d at 983, *Johnston Envtl. Corp.,* 991 F.2d at 619–20, *In re Shaw,* 157 B.R. at 152.

## C. Application of the BAFJA amendments supports the OUST's position.

■ "[W]hen Congress amends the bankruptcy laws, it does not write on a clean slate." *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992), *quoting Emil v. Hanley,* 318 U.S. 515, 521, 63 S.Ct. 687, 690–91, 87 L.Ed. 954 (1943). Rather, Congress is aware of prior judicial interpretation. *See id.* at 419, 112 S.Ct. at 779.

The amendments of the BAFJA of 1984 were effective as to "cases filed 90 days after the date of enactment." Pub.L.No. 98–353 at § 553(a), 98 Stat. 333. Courts almost uniformly held that the BAFJA amendments did not apply to cases that were filed before the effective date and converted to chapter 7 after that date. *See In re Orange Coast Plastic Molding, Inc.,* 64 B.R. 798, 799 (Bankr.C.D.Cal.1986)(holding that in a case filed before the effective date of the BAFJA amendments, section 326(a) as amended did not apply, even when the trustee was not appointed until after the effective date), *U.S. Trustee v. Kinser,* 128 B.R. 417, 420–21 (W.D.Va.1991)(conversion of a case does not constitute a new filing for the purpose of awarding higher trustee fees of section 326(a) as amended by BAFJA), *Kandel v. Alexander Leasing Corp.,* 107 B.R. 548, 551 (N.D.Ohio 1988)(because the bankruptcy was commenced prior to 1984, the trustee's compensation is limited to section 326(a) as written prior to the BAFJA, even though the trustee was not appointed until after the effective date of the amendment), *In re Leedy Mortgage Company, Inc.,* 126 B.R. 907, 916 (Bankr.E.D.Pa.1991)(conversion of a case does not change the date of the filing of the petition or commencement of the case),

*In re Custom Rock Products, Inc.,* 75 B.R. 885, 887 (Bankr.D.Or.1987), *In re Monex,* 74 B.R. 43, 45 (Bankr.E.D.Tenn.1987)(holding that conversion of a case from one chapter to another does not create a change in the filing date).

Congress must have enacted the Reform Act with a full understanding of the case law that grew around the application of the BAFJA. If Congress intended the 1994 amendments to section 326(a) to be applied differently than the 1984 amendments, Congress would have so stated. Instead, the only difference in the 1994 amendments is that the effective date hinges upon the "date of commencement" instead of the "date of filing." *Compare* Pub. L.No. 103–394, 108 Stat. 4106 (1994) *with* Pub.L.No. 98–353, 98 Stat. 333 (1984). However, as set forth above, this is a difference without a distinction.

The Trustee argues that the decisions of *In re Yale Mining Corp.,* 59 B.R. 302 (Bankr.W.D.Va.1986), and *In re Monus,* 210 B.R. 541, more clearly follow the intent of Congress in amending section 326(a). In *Yale Mining,* the issue was whether the fees awarded to the preceding chapter 11 trustee needed to be considered in determining the fees of the subsequent chapter 7 trustee in a converted case. The court held that aggregation of fees between a chapter 7 and chapter 11 trustee is not required when a case is converted. In so holding, the court found that a chapter 7 and chapter 11 trustee do not serve within the same "case" within the meaning of section 326(c). *See Yale Mining,* 59 B.R. at 304. The district court in *Kinser,* 128 B.R. at 420–21, however, held that the *Yale Mining* decision did not control the issue presently before this Court. The *Kinser* court held that conversion of a case "from a chapter 11 to a chapter 7 case in bankruptcy does not constitute a new filing of a case for the purpose of awarding the higher trustee fees of section 326(a) as amended." *See id.*

In *In re Monus,* 210 B.R. 541, the bankruptcy court held that in a case which is filed before the effective date of the 1994 Reform Act, and when that case is converted after the effective date, the amended fee formula under section 326(a) should be applied. The court relied solely upon the *Yale Mining* decision and disregarded *Kinser.* The court stated that its view was not "mainstream," but was consistent with the policies intended by Congress. *See id.* at 543. This Court declines to follow *Monus* because the statutory language is plain and should be enforced. Moreover, the greater weight of authority goes against the *Monus* decision. *See In re Orange Coast Plastic Molding, Inc.,* 64 B.R. at 799, *Kinser,* 128 B.R. at 420–21, *Kandel,* 107 B.R. at 551, *In re Leedy Mortgage Company, Inc.,* 126 B.R. at 916, *In re Custom Rock Products, Inc.,* 75 B.R. at 887, *In re Monex,* 74 B.R. at 45.

 The Trustee further argues that Congress intended the amendments to section 326(a) to apply based upon the date a trustee is appointed, rather than the date the petition is filed. However, section 702(b) of the Reform Act is unambiguous in that the amendments only apply to cases commenced after October 22, 1994. Whether or not the Trustee was appointed after the effective date of the Reform Act is irrelevant as that fact does not change the date of the commencement of the case. *See In re Orange Coast Plastic Molding, Inc.,* 64 B.R. at 799, *Kinser,* 128 B.R. at 418 (when case is filed before the effective date, whether the chapter 7 trustee is appointed before or after the effective date is irrelevant), *see also Kandel,* 107 B.R. at 551.

Here, the bankruptcy case was commenced prior to October 22, 1994. Therefore, the determination of the Trustee's compensation is governed by section 326(a) as the provision existed prior to the Reform Act. Section 326(a) fixes the maximum compensation of the Trustee. *See* Section 326(a). Under section 326(a) as it existed prior to the 1994 amendments, the maximum fee the Trustee can receive based upon total receipts of $155,013.55 is $4,830.41.

 The Court finds further, and the Trustee so concedes, that the Trustee should have submitted his Application earlier. Based upon the delay, and the Trustee's proposed voluntary reduction, the Trustee's final fees are reduced by $750.00. The Trustee's final fee compensation shall be in the amount of $4,080.41.

## IV.

### CONCLUSION

Based on the foregoing, the Trustee shall disgorge fees in the amount of $6,771.85 and reduce his fees by $750.00, for a total fee amount of $4,080.41. The Court will prepare an order consistent with this memorandum of decision.